# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTHWESTERN CORPORATION, | ) | Case No. 03-12872 (KJC) |
| | ) | |
| Reorganized Debtor. | ) | |
| | ) | |
| _____ | ) | |
| MAGTEN ASSET MANAGEMENT | ) | |
| CORPORATION and LAW DEBENTURE | ) | |
| TRUST COMPANY OF NEW YORK, | ) | |
| | ) | Appeal No. 07-00114-JJF |
| Appellants/Movants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NORTHWESTERN CORPORATION, | ) | |
| | ) | |
| Appellee/Respondant. | ) | |

## JOINDER OF THE PLAN COMMITTEE IN SUPPORT OF APPELLEE NORTHWESTERN CORPORATION'S OPENING RESPONSE BRIEF

The Plan Committee (the "Committee") appointed in the above-captioned chapter 11 case of NorthWestern Corporation ("NorthWestern") pursuant to Section 7.9 of NorthWestern's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan"), by and through its undersigned counsel, hereby joins in Appellee NorthWestern's brief in opposition dated April 9, 2007 (the "Opposition")[1] to the appeal filed by Magten Asset Management Corporation and Law Debenture Trust Company of New York seeking to reverse the order of the Bankruptcy Court dated February 1, 2007 (the "Order"). The Order granted NorthWestern's Motion

_____

[1]    Capitalized terms not defined herein shall have the same meaning as in the Opposition.

Pursuant to 11 U.S.C. §§ 105(a) and 1142(b) and Rule 3020(d) of the Bankruptcy Rules, Seeking Entry of an Order in Aid of Execution of Confirmed Plan of Reorganization.

The Committee is charged with protecting the interests of NorthWestern's unsecured creditors during the final stages of this case. The primary purpose of the Committee is to oversee the "[c]laims reconciliation and settlement process." Plan at § 7.9. One of its key interests is to ensure that all unsecured creditors receive their rightful recoveries under the Plan.

The Committee supports and joins in NorthWestern's arguments set forth in the Opposition that Appellants have failed to satisfy the requisite standards to reverse the Order.[2] Accordingly, the Committee requests the Court deny the Appeal for all of the reasons stated herein and in the Opposition.

In filing the Appeal, Appellants continue their onslaught of litigation and appellate advocacy designed to force NorthWestern and the Plan Committee to capitulate to Appellants' unreasonable demands for a settlement of their hotly disputed unsecured claims. Appellants' motives in appealing the Order were made clear by their motions for stay pending appeal whereby they sought to derail the BBI Merger, and thereby further delay the supplemental distributions from the Disputed Claims Reserve to bona fide unsecured creditors. Appellants sought such relief even though the Order from which Appellants appeal did not authorize or approve the BBI Merger. Appellants' motives are further made clear by their statements made throughout the course of this chapter 11 case that they could and would receive various forms of consideration to satisfy their claims, including cash.

---

[2]    The Plan Committee does not join in NorthWestern's position that the Plan provides that Surplus Distribution are to be made only *after* all disputed claims are resolved. It is the Plan Committee's position, as affirmed by this Court, that the Plan expressly compels NorthWestern to distribute Surplus Distributions *regardless* of whether Appellants' disputed claims are resolved. See infra ¶4.

Appellants now appeal issues that were neither decided nor authorized by the Order. The limited relief granted by the Order did not amend the Plan by authorizing or approving the BBI Merger, nor did it authorize any form of disparate treatment of Appellants in comparison to other claimants holding Class 9 claims. Enough is enough. This Court should not countenance Appellants' strong-arm tactics to force an unreasonable settlement of their disputed claims. Accordingly, the Committee respectfully requests that the Court grant the relief requested by the Opposition and deny the Appeal in its entirety. In support of this Joinder, the Committee further represents as follows:

## Argument

1.    The Order from which Appellants appeal did not authorize a "backdoor amendment" to the Plan because it did not in any way authorize or approve the BBI Merger. Rather, the Order merely authorized LaSalle, the trustee of the Disputed Claims Reserve, in the event the BBI Merger was ever consummated, to invest cash proceeds it receives with respect to the shares held in the Disputed Claims Reserve in accordance with section 345 of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and relieved LaSalle from any requirement it might otherwise have to post a bond in connection with such investments.

2.    Moreover, the Order did not amend the Plan or authorize disparate treatment of Appellants' claims in violation of section 1123(a)(4) of the Bankruptcy Code. In particular, Appellants have failed to demonstrate that the value they would receive for their claims, if ever allowed, is different from the value that similarly situated creditors have received. Simply put, Appellants cannot establish that NorthWestern stock is more valuable than cash. Moreover, all shares of New Common Stock will be

converted into cash upon the consummation of the BBI Merger, including shares that ultimately will be distributed to other creditors as Surplus Distributions in accordance with Section 7.7 of the Plan. Thus, there is no disparate treatment of Appellants' claims.

          3.        Section 7.7 of the Plan requires NorthWestern, after the effective date of the Plan, to make subsequent distributions of New Common Stock every six months to holders of Allowed Class 7 and Class 9 Claims from Surplus Distributions held in the Disputed Claims Reserve on a pro rata basis.[3] Surplus Distributions is defined by the Plan to include stock "plus any interest, dividends or other Distributions earned thereon."[4]

          4.        Appellants hold the sole remaining disputed claims that would, if allowed in whole or part, be entitled to recover from the Disputed Claims Reserve. As decided recently by this Court on March 2, 2007, the Plan compels NorthWestern to make Surplus Distributions to unsecured creditors in accordance with the express terms of Section 7.7 *regardless* of whether Appellants' disputed claims are resolved.[5] Accordingly, creditors holding Allowed Class 7 and Class 9 Claims were entitled to

---

[3]    Section 7.7 of the Plan provides that " . . . On each Subsequent Distribution Date, the holders of Allowed Claims shall receive a Pro Rata Share in the Surplus Distributions attributable to such holders' Class; provided, however that the Reorganized Debtor shall not be under any obligation to make Surplus Distributions on a Subsequent Distribution Date unless the aggregate market value of the Surplus Distributions (which value shall be determined based on the intrinsic value as of the Effective Date) to be distributed on such Subsequent Distribution Date exceeds $50,000 in any Class . . ."

[4]    Section 7.7 of the Plan provides "the following assets shall constitute Surplus Distributions. . . to the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, any excess of the amount of Cash or New Common Stock in the Disputed Claims Reserve attributable to such Disputed Claim over the amount of Cash or New Common Stock actually distributed on account of such Disputed Claim plus any interest, dividends or other Distributions earned thereon." Plan at § 7.7.

[5]    See Docket Nos. 21 and 22 in Appeal No. 06-157-JJF and Docket Nos. 12 and 13 in Appeal No. 06-158-JJF. By this Court's March 2 decision, "[t]he Plan requires distributions of such surpluses every six months and does not specifically provide that all Disputed Claims must be resolved before any Surplus Distributions can be made. The Court concludes that the Plan language is clear and unambiguous and that Surplus Distributions are mandated without regard to the status of any other Disputed Claims, including the QUIPS claims." See Memorandum Opinion of District Court at p. 5 [Appeal 06-157, Docket No. 21].

subsequent distributions of New Common Stock constituting Surplus Distributions as early as November 1, 2005.[6]

5.    Any argument that the Order impairs Appellants' interests in comparison to those other creditors strains credibility—especially in light of the multiple prior statements whereby Appellants have plainly expressed their willingness to accept cash. (See Opposition at pp. 23-24). Assuming, arguendo, a distribution to Appellants for the full amount of Appellants' disputed claims (to which they are not entitled), other creditors are entitled to receive a supplemental distribution of *at least* 1.344 million shares which are valued at approximately $49.7 million at the "cash-out" price of the BBI Merger of $37 per share. However, because both Appellants and Appellee have appealed this Court's March 2 decision,[7] the creditors holding Allowed Class 7 and Class 9 Claims continue to wait for the supplemental distributions mandated by the Plan. When ultimately received, such supplemental distributions are likely to be in the form of cash, the same consideration payable to Appellants if the merits of their claims are ever sustained.

6.    Lastly, contrary to Appellants' arguments, despite the Plan having been substantially consummated, the Bankruptcy Court acted within its authority granted under Bankruptcy Rule 3020(d) to issue the Order. See Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.), 372 F.3d 154, 165 (3d Cir. 2004) (bankruptcy courts retain the power to issue post-confirmation orders necessary to administer the estate pursuant to Bankruptcy Rule 3020(d)); Fed. R. Bankr. Proc. 3020(d), Advisory Committee Notes

---

[6]    Section 1.183 of the Plan defines Subsequent Distribution Date as every six (6) month anniversary of the Effective Date.

[7]    Appeal No. 06-157, Docket Nos. 23 and 24.

("Subdivision (d) clarifies the authority of the court . . . to continue to administer the estate as necessary . . .")  See also Bergstrom v. Dalkon Shield Claimants Trust (In re A.H. Robins Co.), 86 F.3d 364, 375 (4th Cir. 1996) (in affirming a district court's order limiting attorney fees, the 4th Circuit rejected arguments that the district court had improperly modified a substantially consummated plan holding that section 1127(b) does not take away the power of courts to issue orders as may be appropriate to carry out the provisions of the Bankruptcy Code and that courts retain post-confirmation power to issue orders necessary to the administration of the estate pursuant to Bankruptcy Rule 3020(d)).  The Bankruptcy Court in granting the Order merely effectuated the further implementation of the Plan post-confirmation where the Bankruptcy Court found that "granting the relief . . . advances the purposes of the plan, specifically here and of Chapter 11 generally, which is to get value to the creditors, and . . . the relief requested here is entirely consistent with the purpose of it."  (See Pizzurro Aff. Ex. J., p. 44).

       7.     For the reasons discussed above and in the Opposition, Appellants have failed to establish that entry of the Order in any way violated the Bankruptcy Code or the Plan.  Accordingly, the Order should be affirmed in all respects.

For the foregoing reasons, the Committee requests that this Court deny the Appeal in its

entirety and grant such other and further relief as this Court deems just and appropriate.

Dated:  April 12, 2007                              THE BAYARD FIRM

                                                   Neil B. Glassman (No. 2087)
                                                   Charlene Davis (No. 2336)
                                                   Eric M. Sutty (No. 4007)
                                                   222 Delaware Avenue, Suite 900
                                                   P. O. Box 25130
                                                   Wilmington, Delaware  19899

                                                         -and-

                                                   PAUL, WEISS, RIFKIND, WHARTON &
                                                      GARRISON LLP
                                                   Alan W. Kornberg
                                                   Kelley A. Cornish
                                                   Margaret A. Phillips
                                                   1285 Avenue of the Americas
                                                   New York, New York  10019
                                                   Telephone No. (212) 373-3000
                                                   Facsimile No. (212) 757-3990

                                                   Attorneys for the Plan Committee

657030v1                                 7

## CERTIFICATE OF SERVICE

I, Eric M. Sutty, do hereby certify that on this 12th day of April, 2007, I caused a true and correct copy of the attached **Joinder of The Plan Committee in Support of Appellee Northwestern Corporation's Opening Response Brief** to be served upon the parties listed below via hand delivery and electronic mail to local parties and via U.S. First Class mail and electronic mail to all remaining parties.

Victoria W. Counihan, Esquire
Dennis A. Meloro, Esquire
Greenberg Traurig, LLP
The Nemours Building
1007 N. Orange Street, Suite 1200
Wilmington, DE 19801
counihanv@gtlaw.com
melorod@gtlaw.com

Bonnie Fatell, Esquire
Dale Dube, Esquire
David Carickhoff, Esquire
Blank Rome LLP
1201 Market Street, Suite 800
Wilmington, DE 19801
Fatell@BlankRome.com
Dube@BlankRome.com
Carickhoff@BlankRome.com

Kathleen M. Miller, Esquire
Smith,Katzenstein & Furlow
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899
kmiller@skfdelaware.com

Mark Kenney, Esquire
Office of the United States Trustee
844 King Street, Room 2313
Wilmington, DE 19801
mark.kenney@usdoj.gov

Joseph D. Pizzurro, Esquire
Steven J. Reisman, Esquire
Nancy E. Delaney, Esquire
Miriam K. Harwood, Esquire
Curtis, Mallet-Prevost,
    Colt & Mosle LLP
101 Park Avenue
New York, NY 10178
jpizzurro@cm-p.com
sreisman@cm-p.com
ndelaney@cm-p.com
mharwood@cm-p.com

Bonnie Steingart, Esquire
Gary L. Kaplan, Esquire
John W. Brewer, Esquire
Jordanna L. Nadritch, Esquire
Fried, Frank, Harris, Shriver & Jacobson
One New York Plaza
New York, NY 10064
steinbo@friedfrank.com
kaplaga@friedfrank.com
brewejo@friedfrank.com
nadrijo@ffhsj.com

Amanda Darwin, Esquire
John V. Snellings, Esquire
Nixon Peabody LLP
100 Summer Street
Boston, MA  02110
adarwin@nixonpeabody.com
jsnellings@nixonpeabody.com

Alan W. Kornberg, Esquire
Kelley A. Cornish, Esquire
Margaret A. Phillips, Esquire
Ephraim I. Diamond, Esquire
Paul, Weiss, Rifkind, Wharton &
Garrison LLP
1285 Avenue of the Americas
New York, NY  10019
akornberg@paulweiss.com
kcornish@paulweiss.com
mphillips@paulweiss.com
ediamond@paulweiss.com

Eric M. Sutty (No. 4027)