```
                IN THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF DELAWARE



IN RE:                              :
                                    :   Chapter 11
NORTHWESTERN CORPORATION,           :
                                    :
        Reorganized Debtor.         :   Case No. 03-12872 (KJC)
                                    :
_____:_____

MAGTEN ASSET MANAGEMENT CORP.       :
and LAW DEBENTURE TRUST             :
COMPANY OF NEW YORK,                :
                                    :
        Appellant,                  :
                                    :
   v.                               :   Civil Action No. 07-114-JJF
                                    :
NORTHWESTERN CORPORATION,           :
                                    :
        Appellee.                   :

_____
```

Bonnie Steingart, Esquire; Gary L. Kaplan, Esquire and John W. Brewer, Esquire of FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP, New York, New York.
Dale R. Dubé, Esquire and Bonnie G. Fatell, Esquire of BLANK ROME LLP, Wilmington, Delaware.

Attorneys for Appellant, Magten Asset Management Corporation.

John V. Snellings, Esquire and Amanda Darwin, Esquire of NIXON PEABODY LLP, Boston, Massachusetts.
Kathleen M. Miller, Esquire of SMITH, KATZENSTEIN & FURLOW, LLP, Wilmington, Delaware.

Attorneys for Appellant, Law Debenture Trust Company.

Joseph D. Pizzurro, Esquire; Steven J. Reisman, Esquire; Nancy E. Delaney, Esquire and Miriam K. Harwood, Esquire of CURTIS, MALLET-PREVOST, COLT & MOSLE LLP, New York, New York.
Victoria Watson Counihan, Esquire and Dennis A. Meloro, Esquire of GREENBERG TRAURIG, LLP.

Attorneys for Appellee, Northwestern Corporation.

---

**MEMORANDUM OPINION**

August 1, 2007
Wilmington, Delaware

**Farnan,** District Judge.

Pending before the Court is an appeal by Magten Asset Management Corporation And Law Debenture Trust Company Of New York (collectively, "Appellants") from the February 1, 2007 Order of the United States Bankruptcy Court for the District of Delaware granting the Motion Pursuant To 11 U.S.C. §§ 105(a) And 1142(b) And Rule 3020(d) Of The Bankruptcy Rules Seeking Entry Of An Order In Aid Of Execution Of Confirmed Plan Or Reorganization filed by the Reorganized Debtor, NorthWestern Corporation ("NorthWestern"). The Order instructs the Transfer Agent for the shares of NorthWestern's New Common Stock held in the Disputed Claims Reserve to invest all cash proceeds it receives upon tendering those shares to Babcock & Brown Infrastructure Limited ("BBI") in connection with the merger between BBI and NorthWestern. Proceeds and interest earned after the effective date of the merger are to be distributed in accordance with the Plan. The Order also relieves the Transfer Agent from posting bond in conjunction with the investment of the proceeds as might otherwise be required under 11 U.S.C. § 345. For the reasons discussed, the Court will affirm the Bankruptcy Court's February 1, 2007 Order.

I.   **THE PARTIES' CONTENTIONS**

Appellants contend that the Bankruptcy Court's Order should be reversed because it impermissibly alters NorthWestern's

1

substantially consummated chapter 11 plan and deprives Appellants of common stock to which they are entitled. Specifically, Appellants contend that as holders of the QUIPs securities under the Plan, they are entitled to their pro rata share of New Common Stock once their claims are allowed and not to a cash equivalent, as would result from the Order. Appellants contend that a cash distribution would also violate Section 1123(a)(4) of the Bankruptcy Code by treating holders of claims within the same class differently. Appellants further contend that the Bankruptcy Court erred in failing to find that NorthWestern was judicially estopped from seeking to "cash-out" the shares of New Common Stock in the Disputed Claims Reserve.

In response, Northwestern contends that Appellants are using the Bankruptcy Court's Order in an effort to obstruct the merger between BBI and NorthWestern. Northwestern contends that the Bankruptcy Court's Order is narrow and did not address either approval of the merger or conversion of the Disputed Claims Reserve shares to cash, and therefore, these issues are not properly presented in this appeal. NorthWestern acknowledges that if Appellants succeed in obtaining an Allowed Claim against NorthWestern's bankruptcy estate, they will receive a distribution of cash from the Disputed Cash Reserve equal to the value of shares of New Common Stock that they would have otherwise received from the Disputed Claims Reserve under the

2

terms of the Plan. NorthWestern contends that Appellants have argued for a cash payment in the past, and therefore, it is Appellants who are judicially estopped form taking a different position. Northwestern also contends that payment in shares does not offer any "enhanced value" over payment in cash and that upon consummation of the merger, all holders of New Common stock will be required to tender those shares in exchange for cash, including those who have already received shares. Thus, Northwestern maintains that the Order does not provide for different treatment of the same class members under the Plan.

## II. STANDARD OF REVIEW

The Court has jurisdiction to hear appeals from the Bankruptcy Court pursuant to 28 U.S.C. §158(a). The Court reviews the Bankruptcy Court's findings of fact under a "clearly erroneous" standard, and reviews its legal conclusions de novo. See Am. Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3d Cir. 1999). In reviewing mixed questions of law and fact, the Court accepts the Bankruptcy Court's findings of "historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 642 (3d Cir. 1991) (quoting Universal Mineral, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-02

(3d Cir. 1981)). The appellate responsibilities of the Court are further understood by the jurisdiction exercised by the Third Circuit, which focuses and reviews the Bankruptcy Court decision on a de novo basis in the first instance. Baroda Hiss Inv., Inc. v. Telegroup Inc., 281 F.3d 133, 136 (3d Cir. 2002).

## III. DISCUSSION

Reviewing the decision of the Bankruptcy Court in light of the applicable standard of review and the parties' respective arguments, the Court concludes that the Bankruptcy Court's Order is properly authorized under 11 U.S.C. § 105 and Rule 3020(d) of the Bankruptcy Code. Section 13.1 of the Plan provides the Bankruptcy Court with jurisdiction to cure any omissions in the Plan which may be needed to carry out its purpose and intent. The Plan does not make a contingency provision for the eventuality of a merger vis-a-vis the Disputed Cash Reserves, and the Court concludes that this omission may be corrected by the Bankruptcy Court consistent with its authority under Section 105 of the Bankruptcy Code and Bankruptcy Rule 3020(d).

Appellant contends that this omission was intentional on the part of Northwestern, but the Court finds no evidence supporting Appellants' contention. The Plan does not preclude NorthWestern from entering into a merger, and as the Bankruptcy Court recognized, the relief sought by Northwestern here, of allowing the Transfer Agent to invest cash proceeds from the contemplated

4

merger of Northwestern and BBI "advances the purpose of the Plan, specifically here and of Chapter 11 generally, which is to get value to the creditors . . ."

As for Appellants' argument that the Bankruptcy Court's Order amounts to a substantial modification of the Plan by exchanging stock for cash, the Court concludes that the Order makes no such provision. The Bankruptcy Court's Order addresses the narrow issue of whether the Transfer Agent may invest cash it is going to receive from a contemplated merger. The Bankruptcy Court's Order does not authorize or approve the merger and does not authorize or approve the conversion of stock to cash. However, to the extent that such a conversion may be said to be implied by the Order, the Court concludes that such a conversion is not precluded by the Plan. As the Bankruptcy Court noted, there is no right in perpetuity under the Plan for distributions to be in stock only. Indeed, Appellants have argued on numerous occasions that the "economic equivalent" of a distribution in shares would be acceptable to them.[1]

---

[1] While the Court concludes that Appellants previous position belies their argument here that the Plan is limited to stock distributions, the Court hesitates to conclude that Appellants are judicially estopped from making this argument. Judicial estoppel requires a finding that Appellants have changed their position in bad faith with the intent to play "fast and loose" with the Court. Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp., 337 F.3d 314 (3d Cir. 2003). NorthWestern contends that Appellants true motivation behind all of this litigation is to exert pressure on NorthWestern to leverage a settlement of their disputed claims, and therefore,

5

Appellants contend that a cash distribution violates Section 1123(a)(4) of the Bankruptcy Code which provides for equal treatment among creditors in the same class, unless a creditor agrees "to a less favorable treatment" of its claim. In this case, however, Appellants have not demonstrated that a cash payment on their claims is less favorable treatment. Indeed, Appellants have failed to demonstrate that payment in shares offers them an enhanced value compared with payments in cash. Further, the Court agrees with the Bankruptcy Court that Appellants will be in the same position as other creditors of the estate who have already received distributions of shares from the Disputed Claims Reserve. Those creditors, like Appellants should their claims ultimately be allowed, will be required to tender those shares in the merger with BBI, and those shares will be converted to cash in accordance with the terms of the merger. Accordingly, the Court concludes that the Bankruptcy Court's

---

they "will take whatever position they deem to be most obstructive to NorthWestern at any point in time." (D.I. 20 at 25). Although Appellants appear to have taken an irreconcilably inconsistent position on the issue of cash distributions under the Plan, the Court is not prepared to find that this is the result of bad faith. Appellants have pressed this litigation at every avenue and may indeed have walked close to the line; however, at this juncture, the Court does not find that the line has been crossed, and the Court declines to equate Appellants' persistence in pursuing this litigation with bad faith or obstructionist tactics. For this reason, the Court declines to apply the doctrine of judicial estoppel against Appellants at this time.

Order does not result in an impermissible modification of the Plan under 11 U.S.C. § 1127(b) and does not violate the equal treatment provision of 11 U.S.C. § 1123(a)(4).

## IV.   CONCLUSION

For the reasons discussed, the Court will affirm the Bankruptcy Court's February 1, 2007 Order.

An appropriate Order will be entered.

7